MAY CENTERS, INC., Plaintiff and Counterdefendant-Appellant, v. S. G. ADAMS PRINTING AND STATIONERY COMPANY, Defendant and Counterclaimant-Respondent.

Fifth District   No. 5—86—0170

Opinion filed March 31, 1987.—Rehearing denied April 29, 1987.

James J. Raymond and Thomas F. Hennessy III, both of Thompson & Mitchell, of Belleville, for appellant.

Burton C. Bernard and Larry J. Keller, both of Bernard & Davidson, of Granite City, for appellee.

JUSTICE WELCH delivered the opinion of the court:
Plaintiff May Centers, Inc., commenced this action seeking recov-

ery of amounts defendant S. G. Adams Printing and Stationery Company owed pursuant to an "allocable share agreement" between the parties with respect to operating costs for certain "community areas" within Alton Square Shopping Center. Adams counterclaimed alleging plaintiff had breached its duty to deal fairly with defendant with respect to defendant's lease. On plaintiff's motion the circuit court of Madison County ordered the terms of the allocable share agreements between plaintiff and the various tenants of the shopping center be treated as confidential by the parties to the action. Defendant moved the protective orders be vacated, and after an evidentiary hearing the court granted defendant's motion. The trial court stayed its order vacating the protective orders pending plaintiff's appeal to this court. There is no cross-appeal.

According to the record, defendant operates a "specialty shop" as a tenant within Alton Square, a shopping center developed and operated by plaintiff. The remainder of the shopping center is occupied by other tenant specialty stores, as well as two large department stores, J. C. Penney and Famous-Barr. The two large stores own their buildings and are not tenants. In addition to the areas within stores, the mall includes common or community areas. Each tenant is responsible for a share of plaintiff's expenses of maintaining the common areas. This responsibility is the subject of the "allocable share agreements" which are the subject of this appeal. Under its allocable share agreement, defendant agreed to pay a monthly community area charge of 7 cents per square foot of the leased premises, subject to adjustment by plaintiff for increased costs. Until February 1980, defendant paid a community area charge of $336.56 per month. After plaintiff notified defendant of a substantial increase in the per-square-foot rate of defendant's common area charge (on or about February 1980, plaintiff increased defendant's community area charge to $1,001.50 per month), defendant refused to pay, and plaintiff commenced this action to recover the charges. According to defendant's answer, defendant stopped paying the community area charge "because of its belief that an indeterminate part of the charges are invalid." Defendant also counterclaimed seeking damages and rescission of its lease for plaintiff's alleged breach of its duty to disclose facts pertinent to calculation of the community area charges.

On defendant's motion, the trial court ordered plaintiff to produce to defendant all of the Alton Square allocable share agreements since December 6, 1977, with the condition that only defendant's president and defendant's counsel retain copies of the agreements and that defendant keep that material confidential and use it for purposes of

this case only. The court later extended the protective order to include all documents, testimony, and discovery adduced at certain depositions.

Defendant moved to vacate the protective orders; plaintiff moved to extend them to all future discovery. A hearing was held. Defendant's counsel argued at the hearing that dissemination of the contents of the allocable share agreement was necessary to investigate the possibility of a class action and to explore possible areas of impeachment. The sole witness at the hearing was William Grafstrom, plaintiff's chairman. Grafstrom testified it was "understood" in the industry that, to protect the bargaining position of the developer, the allocable share agreements were regarded as confidential. Grafstrom also testified that if a major department store, for example J. C. Penney, became aware of all the intricacies of plaintiff's allocable share agreement with Famous-Barr, Penney could use that information to obtain more favorable terms for itself, either at a new shopping center or by withholding approval over matters it had a right to approve or disapprove at any existing location where Penney dealt with plaintiff.

On March 10, 1986, the court entered the order appealed from. The order stated the following findings: In initially entering the protective orders the court had no evidence before it as to the need for such orders, but relied on the good-faith statements of plaintiff's counsel that the allocable share agreements were confidential; defendant had not explained to the court the meaning of the allocable share agreements, and its showing of predicted injury in the event of disclosure was conclusional; and unrestricted communication of the information obtained through discovery might lead to discovery of additional evidence or conduct relevant to the issues and to impeaching statements or conduct. The court also concluded, citing Supreme Court Rule 308 (87 Ill. 2d R. 308), that its order involved a substantial question of law as to which there was a substantial ground for disagreement and that an immediate appeal might materially advance the ultimate termination of the litigation. The court identified the question as follows:

> "In a shopping center developer-landlord's suit against a tenant for an unpaid share of common area maintenance costs incurred by the developer-landlord at the Shopping Center, does testimony by the plaintiff that it treats—and that the shopping center developer industry in the United States treats—the terms of the obligations of the department stores to pay a share of the shopping center's common area maintenance costs as confidential, and, testimony that disclosure of said terms will seriously injure the shopping center developer's business by increasing

the bargaining power of tenants and other department stores, require the Court to issue a protective order under Rule 201(c)(1) that the tenant and its counsel also treat the information about said terms as confidential and not communicate it to any person who is not party to the lawsuit?"

Because Rule 308 is an exception to the general rule that only final judgments may be appealed, an appeal under Rule 308 should be limited to the question identified by the trial court. This court should not expand upon the questions brought before us by the trial court in order to answer others which could have been included. *Getto v. City of Chicago* (1981), 92 Ill. App. 3d 1045, 1048, 416 N.E.2d 1110, 1112-13.

■■ ■ Pursuant to Supreme Court Rule 201(c)(1), a circuit court may make protective orders denying, limiting, conditioning, or regulating discovery to prevent "unreasonable annoyance, expense, embarrassment, disadvantage, or oppression." (87 Ill. 2d R. 201(c)(1).) Rule 201(c) gives the trial court broad authority to prevent abuses of the liberal discovery afforded under our discovery rules. (See Ill. Ann. Stat., ch. 110A, par. 201, Historical and Practice Notes, at 233 (Smith-Hurd 1985).) The nature of a Rule 201(c) order depends on the facts of the particular case. (*Sarver v. Barrett Ace Hardware, Inc.* (1976), 63 Ill. 2d 454, 461-62, 349 N.E.2d 28, 31.) To accomplish the purpose of discovery procedures it is necessary that a degree of flexibility be employed in the application of the rules. (63 Ill. 2d 454, 462, 349 N.E.2d 28.) There is ample precedent for the entry of a protective order preventing dissemination of sensitive discoverable materials to third parties or for purposes unrelated to the lawsuit. See, *e.g., Seattle Times Co. v. Rhinehart* (1984), 467 U.S. 20, 81 L. Ed. 2d 17, 104 S. Ct. 2199; *Richards v. Superior Court* (1978), 86 Cal. App. 3d 265, 150 Cal. Rptr. 77; *Bee Chemicals Co. v. Service Coatings, Inc.* (1969), 116 Ill. App. 2d 217, 223 N.E.2d 512; *Hopkins v. Hopkins* (Mo. App. 1979), 591 S.W.2d 716.

Plaintiff argues that in light of the sensitive nature of the allocable share agreements, plaintiff was presumptively entitled to the protective orders initially entered in this case, and no evidence was introduced to overcome the presumption. *Richards v. Superior Court* (1978), 86 Cal. App. 3d 265, 150 Cal. Rptr. 77, cited by plaintiff in support of the existence of the presumption, is distinguishable, though not to great extent. In that case financial information relevant only on the subject of punitive damages was sought to be protected from dissemination. Reasoning there was usually some potential that disclosure of detailed financial information might react adversely against the disclosing party for reasons unrelated to the lawsuit, *e.g.,* greater expo-

sure and the possibility of damage to the discloser in the competitive business arena, the California Court of Appeals concluded the party disclosing such information was presumptively entitled to a protective order that the information be revealed only to counsel for the discovering party or to counsel's representative and that once so revealed, the information could be used only for purposes of the lawsuit. In the case at bar, the information sought may be relevant not only to damages but also to plaintiff's and defendant's ultimate liability to each other under their respective claims. In any event, by its own terms, Rule 201(c) requires the party seeking a protective order to show good cause. Thus, although the evidence in question in *Richards v. Superior Court* is the subject of similar privacy interests as the evidence in question here, the presumption applied in *Richards v. Superior Court* does not apply in our case.

██ However, *Richards v. Superior Court* recognizes the inherently sensitive nature of financial data and the need to protect such data from exploitation in the process of discovery except as necessary to prepare the parties to try the lawsuit. Defendant in the case at bar does not contend it was prevented from discovering any discoverable materials or that plaintiff failed to divulge any discoverable information or documents. Defendant is not prevented by the protective orders from consulting with, questioning, or deposing anyone, including the other tenants at Alton Square, with respect to any matters pertinent to this action or any matters which may lead to matters pertinent to this action. In other words, defendant's ability to gather information in discovery is unfettered by the protective orders in question. Defendant claims the right to divulge what it has discovered or may yet discover to all the world, including the other tenants of Alton Square. Plaintiff argues, not merely that such disclosure would cause plaintiff annoyance, expense, embarrassment, disadvantage, or oppression, but that it would do so unreasonably. Grafstrom's testimony that the allocable share agreements were generally treated as confidential was uncontradicted, as was his opinion that plaintiff would be damaged by free dissemination of the information. Thus at issue is whether possible erosion of plaintiff's bargaining position as lessor is simply part of the price plaintiff must pay to obtain an adjudication of its rights under the lease and allocable share agreement.

This is not a necessary or even a desirable price for plaintiff to have to pay to vindicate its alleged rights. Discovery should educate the parties as to the real value of their claims and defenses and expedite ascertainment of the truth and ultimate disposition of the lawsuit. (*Monier v. Chamberlain* (1966), 35 Ill. 2d 351, 361, 221 N.E.2d 410,

417.) A litigant has no constitutional right to disseminate information made available only for purposes of trying his suit. (*Seattle Times Co. v. Rhinehart* (1984), 467 U.S. 20, 31-32, 81 L. Ed. 2d 17, 26, 104 S. Ct. 2199, 2206-07; see *Hopkins v. Hopkins* (Mo. App. 1979), 591 S.W.2d 716, 718-19.) Pretrial discovery has a significant potential for abuse. This abuse is not limited to matters of delay and expense; discovery may also implicate privacy interests of litigants and third parties. Such interests are implicitly protectable by protective orders. (*Seattle Times Co. v. Rhinehart* (1984), 467 U.S. 20, 34-35, 81 L. Ed. 2d 17, 28, 104 S. Ct. 2199, 2208.) Defendant's right of free speech is not the only important right at stake. As the Supreme Court of Washington (quoted with approval by the United States Supreme Court in *Seattle Times Co. v. Rhinehart* (1984), 467 U.S. 20, 36, 81 L. Ed. 2d 17, 29, 104 S. Ct. 2199, 2209) stated, rather than expose themselves to unwanted abusive use of discovered matters, individuals may well forgo the pursuit of their just claims: "The judicial system will thus have made the utilization of its remedies so onerous that the people will be reluctant or unwilling to use it, resulting in frustration of a right as valuable as that of speech itself." (*Rhinehart v. Seattle Times Co.* (1982), 98 Wash. 2d 226, 254, 654 P.2d 673, 689.) Defendant's stated need to spread (as opposed to gather) the information freely (*i.e.*, to search for impeachment material or grounds for a class action) is speculation on this record. Rather, this is the type of situation Rule 201(c) was intended to remedy. We can state no opinion as to whether defendant might show later that it has some concrete reason for disseminating the information it gathers from the allocable share agreements; we only conclude that on this record plaintiff has shown good cause for keeping the information confidential, and defendant has shown no need or good reason to disseminate it. We find plaintiff has shown good reason for the protective orders it seeks, and defendant has shown no good reason to vacate such orders at this time.

For the foregoing reasons, we conclude the question identified by the circuit court must be answered in the affirmative. Accordingly, the order of the circuit court vacating the protective orders in this case is reversed, and this cause is remanded to the circuit court for further proceedings.

Reversed and remanded.

JONES AND HARRISON, JJ., concur.