SECOND DIVISION

DECEMBER 1, 1998

1-97-4166

DONALD AVERY, PATRICK WATTS, and ) APPEAL FROM THE

QUINTIN WILKERSON, ) CIRCUIT COURT OF

) COOK COUNTY,

Plaintiffs, ) ILLINOIS

)

v. ) No. 95-M1-304978

)

MICHELLE A. SABBIA, )

)

Defendant-Appellant )

)

(David P. Calimag, ) THE HONORABLE

) RONALD F.BARTKOWICZ,

Movant-Appellee). ) JUDGE PRESIDING.

JUSTICE COUSINS delivered the opinion of the court:

Plaintiffs (who are not a party to this appeal) filed a negligence action against defendant, Michelle Sabbia, for injuries resulting from an automobile accident.  After discovery was closed, the trial court granted defendant's motion to reopen discovery for the limited purpose of deposing plaintiffs' treating physicians, including Dr. David P. Calimag.  Thereafter, Dr. Calimag made a motion for a full protective order of his discovery deposition taken May 3, 1997, which was granted until further order of court.  On appeal, defendant contends that: (1) the trial court abused its discretion in sealing Dr. Calimag's deposition transcript as no legal basis existed for the trial court's order; and (2) this matter should have been considered by the United States District Court before which an action under the Racketeer Influenced and Corrupt Organizations (RICO) Act (18 U.S.C. §1962 (West 1996)) was pending.  

BACKGROUND

On May 11, 1993, plaintiffs Donald Avery, Patrick Watts and Quintin Wilkerson were involved in an automobile accident with defendant Michelle Sabbia.  Three days later, on May 14, 1993, at the request of a referring doctor, Dr. David P. Calimag examined Watts and Wilkerson and performed electromyography (EMG) examinations on both to test for nerve damage.  The results of Dr. Calimag's neurological consultations indicated that plaintiffs' muscles were "normal."

On July 13, 1994, plaintiffs filed suit against defendant.  Discovery in the case was closed on March 17, 1995, and the case went to mandatory arbitration on April 20, 1995.  The arbitrators found in favor of plaintiffs and awarded each plaintiff $1,000.  Plaintiffs, however, rejected the arbitration award.

On September 12, 1996, defendant moved to reopen discovery for the limited purpose of deposing plaintiffs' treating physicians, including Dr. Calimag.  Defendant specifically indicated that she wanted to depose Dr. Calimag to determine what afflictions he was ruling out by performing EMG studies on each patient.  The trial court granted the motion on October 21, 1996.

Two weeks following the defendant's motion to reopen discovery, defendant's insurance carrier, State Farm Mutual Automobile Insurance Company (State Farm), filed a lawsuit in federal court against approximately 30 doctors and lawyers, including Dr. Calimag.  In the federal case, State Farm sued under the RICO act, alleging that certain individuals staged automobile accidents to obtain money from State Farm under false pretenses.  The allegations against Dr. Calimag were that he conducted and/or billed for unnecessary examinations of alleged patients who were referred to him by doctors higher up in the conspiracy chain.  The federal case also listed over 500 accidents that it claimed were part of the scheme, including the accident in the present case.

As a result of Dr. Calimag being noticed for six different state court personal injury depositions at or around the same time the federal case was filed, counsel for Dr. Calimag filed numerous motions praying for protective orders that would seal the doctor's deposition transcripts for use in only each pending action.  Dr. Calimag asserted, in each case, that he believed State Farm engaged its attorneys to take multiple depositions of Dr. Calimag for the purpose of obtaining discovery for the pending federal case and not for the purpose of obtaining discovery in the state court personal injury cases.  

On January 27, 1997, Dr. Calimag filed his first motion for a protective order in this case that sought to restrict the use of his deposition to the case before the trial court and not allow defendant's attorney to give the deposition to State Farm to be used in the prosecution of the pending federal case.  Dr. Calimag specifically alleged that the attempt to depose Dr. Calimag: (1) was a misuse of state court discovery procedures since State Farm hired defendant's attorney to defend her case; (2) improperly taxed the resources of the state courts for discovery that should be taken in federal court; and (3) gave State Farm the opportunity to unfairly take multiple depositions of Dr. Calimag for use in the federal case, in violation of Supreme Court Rule 201(c) (134 Ill. 2d R. 201(c)).

At the hearing on the motion, the trial court determined that there was insufficient evidence showing that State Farm was taking Dr. Calimag's deposition for use in the federal case.  In an attempt to eliminate questions not relevant to the case at hand, the court ordered that a limited deposition proceed in the court's presence on May 3, 1997, without a protective order.

Following completion of the deposition, Dr. Calimag filed a motion for a full protective order regarding the deposition transcript, which would limit the use of his deposition to the case before the court.  Dr. Calimag asserted that State Farm's failure to settle the case was further indicia that Dr. Calimag's deposition was taken for the purpose of using it in the federal RICO action, which illustrates an abuse of the discovery process of the circuit court.

At the September 12, 1997, hearing on Dr. Calimag's motion, the trial court granted plaintiffs' motion to vacate their rejection of the arbitration award.  Thereafter, on October 10, 1997, the trial court granted Dr. Calimag's motion for full protective order sealing the deposition transcript until further order of the court.  Defendant appeals from this order.

After defendant initiated her appeal, on July 31, 1998, the federal court dismissed all charges against Dr. Calimag in the federal case, with prejudice, based upon a settlement agreement between the parties.  As a result, defendant moved this court to supplement the record on appeal with the federal court order.  On October 20, 1998, this court denied defendant's motion, without prejudice, subject to her compliance with Rule 324 (134 Ill. 2d R. 324), which permits the clerk of the trial court to certify the record on appeal.  

On October 30, 1998, the trial court granted defendant's motion to amend the record on appeal to include the final judgment order.  Pursuant to the trial court's order, the clerk of the circuit court prepared an amendment to the record on appeal to include the aforementioned federal court order, thereby complying with Rule 324.  Defendant then included an additional contention in her reply brief that asserted "with the settlement and dismissal of the federal RICO action against Calimag, the main reason for sealing Dr. Calimag's deposition no longer exists." 

On November 6, 1998, Dr. Calimag objected to defendant's motion to supplement the record on appeal and filed a cross-

motion to strike both the July 31, 1998, order of the federal court from the record on appeal and section III of defendant's reply brief, which contains the additional contention. 

We deny defendant's motion to supplement the record on appeal, grant Dr. Calimag's cross-motion to strike section III of the defendant's reply brief, and affirm the order of the circuit court.

OPINION

I

  Before addressing the legal arguments advanced by the parties, we must first consider defendant's motion pursuant to Supreme Court Rules 329 and 324 (134 Ill. 2d Rs. 329, 324) for leave to supplement the record on appeal with the final judgment order entered on July 31, 1998, which dismissed Dr. Calimag from the pending federal RICO action.  Rule 329 allows the parties to supplement the record with documents that were before the trial court but were not contained in the record on appeal.  See 
State Farm Mutual Automobile Insurance Co. v. Stuckey
, 112 Ill. App. 3d 647, 649, 445 N.E.2d 791, 792 (1983).  However, matters not properly part of the record and not considered by the trial court will not be considered on review even though included in the record.  
Stuckey
, 112 Ill. App. 3d at 649, 445 N.E.2d at 792; 
Meyerson v. Software Club of America, Inc.
, 142 Ill. App. 3d 87, 91, 491 N.E.2d 150, 153 (1986); 
People v. Sheridan
, 51 Ill. App. 3d 963, 965, 367 N.E.2d 422, 423 (1977).  Moreover, to the extent that matters in a brief are not supported by the record, a court of review will disregard them.  
Meyerson
, 142 Ill. App. 3d at 91, 491 N.E.2d at 153.

Here, the federal court order was entered eight months after Dr. Calimag's motion for a full protective order was granted and defendant's notice of appeal was filed.  Accordingly, as the trial court could not consider the federal court order when ruling on Dr. Calimag's motion, a court of review will not consider the order in its determination of the merits of the arguments raised on appeal.  See 
Stuckey
, 112 Ill. App. 3d at 649, 445 N.E.2d at 792; 
Meyerson
, 142 Ill. App. 3d at 91, 491 N.E.2d at 153; 
Sheridan
, 51 Ill. App. 3d at 965, 367 N.E.2d at 423.  As such, defendant's motion to supplement the record on appeal with the federal court order is denied and Dr. Calimag's motion to strike section III of defendant's reply brief is granted.

II

The primary issue before this court is whether the trial court abused its discretion in sealing the deposition transcript of Dr. Calimag.  Defendant asserts no legal basis existed for the trial court's order; however, Dr. Calimag contends that the protective order was sought to bar defendant from misusing the state discovery process as ancillary discovery proceedings for the pending federal RICO action against him.  

As a general rule, considerable latitude is permitted during discovery and the trial court has broad discretion in ruling on discovery matters.  
Pickering v. Owens-Corning Fiberglas Corp.
, 265 Ill. App. 3d 806, 823, 638 N.E.2d 1127, 1139 (1994).  Absent an abuse of discretion affirmatively and clearly shown by appellant, the trial court's order concerning discovery shall not be disturbed on appeal.  
Pickering
, 265 Ill. App. 2d at 823, 638 N.E.2d at 1139; 
Dobbs v. Safeway Insurance Co.
, 66 Ill. App. 3d 400, 402, 384 N.E.2d 34, 36 (1978).  

Illinois Supreme Court Rule 201(c)(1) governs when a trial court can issue protective orders and provides:

"(1) 
Protective Orders
.  The court may at any time on its own initiative, or on motion of any party or witness, make a protective order as justice requires, denying, limiting, conditioning, or regulating discovery to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or oppression."   134 Ill. 2d R. 201(c)(1).

As stated in paragraph (c) of the committee comments to Rule 201 (134 Ill. 2d 201(c)(1), Committee Comments, at 311), the rule gives the trial court broad discretion to make protective orders that prevent abuses of the liberal discovery afforded under our discovery rules.  See also 
Stowers v. Carp
, 29 Ill. App. 2d 52, 69, 172 N.E.2d 370, 378 (1961); 
May Centers, Inc. v. S.G. Adams Printing & Stationery Co.
, 153 Ill. App. 3d 1018, 1021, 506 N.E.2d 691, 694 (1987).  Moreover, the nature of a Rule 201(c) order depends on the facts of the particular case (
May Centers, Inc.
, 153 Ill. App. 3d at 1021, 506 N.E.2d at 694); therefore, the trial court is in the best position to weigh fairly the competing needs and interests of parties affected by the discovery.  
Seattle Times Co. v. Rhinehart
, 467 U.S. 20, 36, 81 L. Ed. 2d 17, 29, 104 S. Ct. 2199, 2209 (1984).  To accomplish the purpose of discovery procedures, it is necessary that a degree of flexibility be employed in the application of the rules.  
May Centers, Inc.
, 153 Ill. App. 3d at 1021, 506 N.E.2d at 694, citing 
Sarver v. Barrett Ace Hardware, Inc.
, 63 Ill. 2d 454, 461-62, 349 N.E.2d 28, 31 (1976).

The Fifth Illinois Appellate Court District has held that Rule 201(c) requires the party seeking a protective order to show "good cause."  
May Centers, Inc.
, 153 Ill. App. 3d at 1022, 506 N.E.2d at 694.  However, our supreme court in 
Statland v. Freeman
, 112 Ill. 2d 494, 499, 493 N.E.2d 1075, 1077 (1986), has held that "Rule 201(c)(1) does 
not
 set out any specific requirements for protective orders.  There is only the broad standard 'as justice requires.' "  (Emphasis added.)  
Statland
, 112 Ill. 2d at 499, 493 N.E.2d at 1077; see also 
Amoco Oil Co. v. Segall
, 118 Ill. App. 3d 1002, 1011, 455 N.E.2d 876, 882 (1983).  
Statland
 is instructive in the present case.

In 
Statland
, a former law partner sought a writ of 
mandamus
 to vacate a protective order entered by the circuit court that prevented him from using documents obtained in discovery from his law partners in an unrelated Internal Revenue Service investigation of his personal tax liability.  Our supreme court held that because the trial court was informed both of the nature of the discovered material and that the plaintiff intended to use it in another proceeding, "it cannot be said that the order was improperly entered, and there is no showing of circumstances which would warrant the exercise by this court of its supervisory authority."  
Statland
, 112 Ill. 2d at 499, 493 N.E.2d at 1078.  

In the case 
sub judice
, defendant argues that it is not reflected anywhere in the record that defendant or her counsel ever "expressly" stated that they intended to use Dr. Calimag's deposition in some other proceeding, much less a federal action in which defendant is not a party.  She further contends that the purpose of taking Dr. Calimag's deposition was simply to defend her in the present case, which allegedly makes 
Statland
 inapplicable to the case at bar.  However, it must be noted that Dr. Calimag's neurological consultations with Watts and Wilkerson indicated that their muscles were normal, a fact more favorable to defendant's contention that she was not negligent in causing the plaintiffs' injuries.  This fact caused concern to the trial court, which commented:

"THE COURT:  I would say one thing, in being perfectly candid with you, is it did raise my eyebrows when I went and read Dr. Calimag's examination.  I felt it was kind of unusual for a defendant to be deposing a doctor when the doctor's finding[s] were, at least in my opinion, favorable to the defendant's case.  It showed no neurological involvement.  It would be something that *** the defendant would want to emphasize.

[Plaintiffs] went for this sophisticated test and this test showed [they] had no neurological damage.  ***  So it does kind of want to raise my eyebrows a little bit saying why would you want to depose someone whose information appears favorable to you unless you want to preserve it in the form of an evidence deposition.  There's been no request for an evidence deposition.

I would say, sort of subliminally, one could say, well, maybe the purpose of taking this deposition is other than just simply for use in the personal injury case.  Because, in my years of practice, it would be kind of unusual for a defendant to be deposing a plaintiff's doctor where the result of the examination was favorable to the defendant, unless to preserve it."

The trial court found further indicia that defendant had intentions of preserving the deposition for use in another proceeding when plaintiffs moved to vacate their rejection of the arbitration award in an effort to resolve the matter before argument on Dr. Calimag's motion.  Defendant, rather than accept the arbitrator's settlement amount to avoid going to trial, voiced her intent to reject the award if the court granted plaintiff's motion even though the plaintiffs' motion would have eliminated the need for the deposition transcript.  This, again, caused the court to question defendant's motives:

"THE COURT:  Let me just ask you quite frankly.  Isn't that sort of a subliminal indication to me that the importance of this case to you or your client is not the individual facts and circumstances of this case, but the larger issue which is boiling out there with the federal court and Dr. Calimag and the litigation that's pending in the federal court?  That seems to me to be at least a legitimate inference to draw from the position that you have taken."

Prior to granting Dr. Calimag's motion, the trial court also stated:

"THE COURT:  And I don't mean to mean this in the way that it sounds.  But I do have a very strong -- call it intuition or whatever the case may be, that the long-term intent of your client is to use this deposition not as a document in the case in chief but rather in the bigger issue that's going on between you[r] client, Dr. Calimag, and others.  I do have that feeling."

Defendant urges this court to agree that the aforementioned statement shows an abuse of discretion in sealing the deposition since the court referred to its "intuition" and "feeling" in the attempt to justify its ruling.  However, the trial court is in the best position to weigh fairly the competing interests and needs of the parties affected by discovery.  
Seattle Times, Co.
, 467 U.S. at 36, 81 L. Ed 2d at 29, 104 S. Ct. at 2209.  As such, it is allowed the flexibility to use its own knowledge and experience in deciding whether justice requires the prevention of abuses to the discovery process through the imposition of the proposed protective order.  See 
May Centers, Inc.
, 153 Ill. App. 3d at 1021, 506 N.E.2d at 694.

The court commented that it would not "permit the participants in the RICO action to take at-depth [
sic
] discovery depositions or use any discovery process in this state case where the intent is to use that information in some other case" because it thought the act would be an abuse of both the discovery process and the order.  Accordingly, in our view, it cannot be held that the trial court abused its discretion in granting Dr. Calimag's motion for a full protective order as the court felt the defendant was abusing the discovery process by preserving information not for the present case, but for the ancillary federal proceeding that addresses the same issue defendant asserts is relevant to the issue at bar.

Defendant additionally asserts that although Dr. Calimag's objections to the deposition are "cloaked in terms of oppression," the real reason he sought to have his deposition sealed was fear of impeachment.  However, this assertion does not change the conclusion in this case even though Supreme Court Rule 212(a) permits the use of deposition testimony for the purpose of impeaching the witness's credibility.  See 134 Ill. 2d R. 212(a).  As illustrated below, defendant's reliance on this rule is misplaced as Rule 212(a) is inapposite to the issues at bar.

Defendant opines that she had good reason to depose Dr. Calimag in detail "simply because he had been accused of fraud and racketeering," and that the present case represents an attempt to defraud defendant and State Farm.  As such, she opines that the deposition of Dr. Calimag would help determine whether he performed unnecessary EMG procedures on Wilkerson, which is interestingly the exact charge against Dr. Calimag in the federal case.  Defendant urges this court to find her theory controlling due to Dr. Calimag's testimony in a different proceeding regarding the proper time frame to test a patient.  Defendant asserts that the testimony in that case conflicts with the facts in the present case.  However, fraud on the part of plaintiffs or Dr. Calimag was never pled as an affirmative defense in defendant's answer to plaintiffs' complaint; therefore, defendant has waived this argument on review.  See 735 ILCS 5/2-613(d) (West 1994).

Under section 2-613(d) of the Illinois Code of Civil Procedure, if the defendant seeks to assert an affirmative defense at trial or on review, she must specifically plead it so the plaintiff is not taken by surprise.  735 ILCS 5/2-613(d) (West 1994).  In failing to do so, the defendant has waived such an argument and it cannot be considered even if the evidence suggests its existence.  
First National Bank v. Village of Mundelein
, 166 Ill. App. 3d 83, 90, 519 N.E.2d 476, 481 (1988); 
Carlson v. City Construction Co.
, 239 Ill. App. 3d 211, 243, 606 N.E.2d 400, 420 (1992). The trial court has the discretion to allow defendant to amend her pleadings to include such an affirmative defense prior to its final judgment; however, defendant has yet to do so.  See 735 ILCS 5/2-616(a) (West 1994); 
Carlisle v. Harp
, 200 Ill. App. 3d 908, 915, 558 N.E.2d 318, 322 (1990).  As such, defendant's argument regarding Dr. Calimag's possible fraudulent activity as shown through the deposition, which must be allowed under Rule 212(a) as impeachable evidence, is irrelevant to the issue at bar.  Rather, in our view, the only issue is whether the trial court abused its discretion in granting Dr. Calimag's motion for a full protective order.  As previously discussed, the court did not abuse its discretion.

III

Defendant also contends that the more appropriate forum to address the concerns raised by Dr. Calimag was the federal court and that the trial court lacked the jurisdiction to bind State Farm, since the company is not a party to this litigation.  However, the fact that State Farm is paying for the defense of this action is persuasive.  Although State Farm is not officially a party to the action, if defendant intends to give deposition transcripts to the company for use in other actions, the trial court, in its discretion, has the authority to prevent such abuses to our liberal discovery process.  See 
May Centers, Inc.
, 153 Ill. App. 3d at 1021, 506 N.E.2d at 694.  Moreover, the order granting Dr. Calimag's motion was entered "until further order of court," which allows defendant or State Farm to present evidence to the trial court at a later date which may warrant an order lifting the seal.

We find that the trial court did not abuse its discretion in sealing the deposition transcript of Dr. Calimag until further order of court.  Accordingly, the order of the circuit court is affirmed.

Affirmed.

RAKOWSKI and McNULTY, JJ., concur.