NOTICE

Decision filed 09/16/08. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-07-0201

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| LELA WILLEFORD, | ) Appeal from the |
| | ) Circuit Court of |
| Plaintiff-Appellee, | ) St. Clair County. |
| | ) |
| v. | ) No. 03-L-134 |
| | ) |
| TOYS "R" US-DELAWARE, INC., TOYS "R" US, | ) |
| INC., JANET STUBBLEFIELD, and CAROL | ) |
| POST MEYERS, | ) Honorable |
| | ) Lloyd A. Cueto, |
| Defendants-Appellants. | ) Judge, presiding. |

_____

JUSTICE CHAPMAN delivered the opinion of the court:

The plaintiff, Lela Willeford, was injured when an easel fell from a shelf and struck her at a Toys "R" Us store. The defendants are Toys "R" Us-Delaware, Inc., Toys "R" Us, Inc., and two managers at the Toys "R" Us store where the plaintiff was injured. The defendants filed a motion for a protective order, which addressed documents that were the subject of an order compelling discovery. When they refused to comply with the discovery order absent a protective order, the court granted the plaintiff's motion for sanctions and ordered the defendants to pay $1,000 and the plaintiff's reasonable attorney fees for services rendered after February 13, 2007. The defendants appeal both the sanctions order and the order denying their motion for a protective order. They argue that (1) the court erred in refusing to grant the protective order and (2) the sanctions should be vacated because it was a "friendly contempt" order, sought by the defendants as a good-faith way of testing the court's pretrial discovery orders. We affirm.

On December 15, 2001, the plaintiff was injured when an easel fell on her from a

1

shelf at one of the defendants' stores. On March 12, 2003, she filed a petition alleging that the defendants negligently failed to (1) safely store, shelve, or retrieve the easel, (2) implement an adequate policy regarding the safe storage, shelving, stacking, placement, and retrieval of merchandise, and (3) provide adequate training and supervision of employees in safely storing, shelving, and retrieving merchandise.

The same day, the plaintiff served each corporate defendant with a set of interrogatories and a request for the production of documents. At issue in this appeal are interrogatory No. 3 and production requests No. 6 and No. 25. Interrogatory No. 3 asked as follows:

> "Other than the instant action, has this Defendant been a party in the last ten (10) years to any type of litigation, or received notice of an alleged injury or other claim, in any manner involving or otherwise pertaining to a box, container, product[,] or any other merchandise or item falling[] or being dropped or pushed[] from overhead, from a shelf or other raised platform or surfaces on the premises of any of Defendant's stores, and striking a customer, employee[,] or any other person?"

The plaintiff further requested the name, address, and telephone number of any party or claimant in any such action; the name, address, and telephone number of any attorney involved; and how each claim was resolved.

Production request No. 6 asked for the following: "Any and all documents *** relating to any investigation, study, evaluation, testing, or other form of inquiry conducted by or on behalf of this Defendant in any manner relating to the incidence of falling merchandise in any of its stores ***." Production request No. 25 asked for the following: "Toys 'R' Us' [*sic*] computer database listing all instances in which merchandise is alleged to have fallen onto and/or struck a person in any of Defendant's stores for the last ten (10) years."

The defendants' response to these interrogatories and requests for production were due on May 13, 2003. The defendants did not respond until June 26. In their interrogatory response, the defendants objected to interrogatory No. 3 on the grounds that it was "overly broad and unduly burdensome in its scope" and also asked for "information that is irrelevant and immaterial to the instant action." The defendants did, however, provide the name of one man who was involved in a falling-merchandise incident in the Fairview Heights Toys "R" Us store in 1997. The defendants stated that there was "no indication [that] there was an injury or any claim made."

In their notice of compliance with the plaintiff's request for production, the defendants objected to request No. 6 on the grounds that it was "overly broad and not limited in time and scope" and included "documents which are not related to the incident in question." They objected to request No. 25 on the grounds that it was "overly broad and not limited in scope and irrelevant to the case at issue."

On July 9, 2003, the plaintiff filed a motion to compel discovery. The defendants filed their response to the motion to compel on September 16. In it, the defendants raised the same objections they raised in their responses to the initial requests–they argued that interrogatory No. 3 and the two production requests were overly broad, unduly burdensome in scope, and not relevant.

On October 27, 2003, the court held a hearing in the matter. The record does not contain either a transcript or a bystander's report of that hearing. The court granted the plaintiff's motion and ordered the defendants to supplement their prior discovery responses by providing information from "any databases available as to merchandise falling from shelves in its stores that struck any person." The court gave the defendants 30 days to comply with its order, which meant that they were to provide the requested information by November 26, 2003.

3

On December 23, 2003, the court held a status hearing. By this time, the defendants had provided additional information pursuant to the October 27 order, but that information was limited to incidents involving falling display items (as opposed to overstock merchandise) which had occurred between 1996 and 2001. At the hearing, the defendants made an oral motion to reconsider and/or clarify the October 27 order. Again, the record does not contain either a transcript or a bystander's report of the December 23 hearing. In a written order, the court denied the defendants' motion and ordered the defendants to fully comply with the earlier order "as drafted." The order also indicates that, during the hearing, the defendants expressed their intent to file a motion for a protective order. Specifically, the order states, "By agreement, Plaintiff will not disseminate any information or materials produced by Defendant until Defendant has had an opportunity to file and obtain a ruling upon a motion for a protective order, *provided, however, that Defendant must file any such motion within 60 days*." (Emphasis added.) The order also provided that the defendants had 60 additional days to comply with the October 27 order. This gave them a deadline of February 21, 2004, both to comply fully with the discovery order and to file a motion for a protective order.

On March 19, 2004, nearly one month past the court's deadline, the defendants filed a motion for a protective order. They argued, for the first time, that the order was "necessary to prevent the use and disclosure by parties or entities unrelated to this litigation of data, documents[,] and information produced by defendants." The defendants did not elaborate on this allegation either by specifying what harm they believed would come to them if the order were not granted or by making any specific allegations with respect to the plaintiff's intentions to use the information improperly.

The motion remained pending for more than a year without a request for a hearing, as the parties engaged in further discovery. On April 14, 2005, the court held a hearing in

4

the matter (the record is unclear regarding how the motion came to a hearing at this time).

On May 27, 2005, the court entered an 11-page written order that revisited the discovery order of October 2003 in addition to ruling on the motion for a protective order. The court found that it would be no more burdensome to the defendants to print all the falling-merchandise incidents in their database than to print a more limited category of incidents. The court rejected the arguments the defendants raised concerning the relevance of incidents involving employees or incidents occurring before 1996 or after 2001. The court explained that even evidence that ultimately proves inadmissible at a trial is discoverable as long as there is some similarity to the incident at issue. The court thus concluded that the discovery order should not be limited.

The court then discussed the motion for a protective order. The court noted that the motion was "unverified, unsubstantiated[,] and conclusory" and that it did not identify or even describe the documents it sought to protect so that the court could determine whether they are the types of material in need of protection. The court further noted that the defendants' motion did not explain how they would be harmed or oppressed absent a protective order. Finally, the court concluded that the defendants failed "to demonstrate 'good cause' within the meaning of Illinois [Supreme Court] Rule 201(c) [(210 Ill. 2d R. 201(c))]." In reaching this conclusion, the court considered federal cases that had rejected arguments similar to the defendants' "apparent concern that[,] absent a protective order, the information and materials which they produce in this case may be disseminated to other present and future litigants bringing claims against them."

We note that, as the defendants argue in this appeal, Rule 201(c) does not contain the phrase "good cause." The parties disagree on whether Illinois case law imposes that requirement and, if so, what that requirement means. We also note that the court's reference to the defendants' "apparent concern" that information might be disseminated to other

5

litigants is the first time this issue appears in the record. The plaintiff points out in her brief that this argument was raised for the first time during the April 2005 hearing on the protective order; however, the record does not contain a transcript or report of that hearing.

On July 25, 2005, the defendants filed a motion to reconsider the May 27 order. In this motion, the defendants argued only that (1) a protective order was necessary to protect the names of the people involved in other incidents, apparently to protect their privacy, (2) incidents that occurred subsequent to the plaintiff's injury are not relevant to show that a dangerous condition existed in the store on the day of the accident, and (3) incidents involving employees (as opposed to customers) are not relevant due to the fact that employees spend more time in Toys "R" Us stores than customers, thus exposing them to a greater risk of injury from falling merchandise.

On the same day, the court, *sua sponte*, entered an order staying all further proceedings in the case pending the parties' compliance with an order referring the case to mediation. The court also ordered additional discovery depositions. (We note that the record does not indicate precisely which issues were to be submitted to mediation.) The parties complied with the referral to mediation, but they failed to reach any agreement. By November 2005, the parties resumed trial preparation. On December 13, 2005, the defendants provided the plaintiff with a report from their database concerning incidents of falling display items that had occurred prior to the plaintiff's accident–including those that had occurred prior to 1996. The defendants did not provide any information relating to incidents occurring after the plaintiff's incident.

On January 12, 2006, the court held a status hearing and entered an order setting a hearing on the defendants' July 25 motion to reconsider, along with all pending discovery disputes, for February 16. The court also gave the defendants a deadline of January 31 to submit any additional briefs and the plaintiff a deadline of February 11 to submit any of her

6

own briefs.

On January 31, the defendants filed a supplemental brief in support of their motion to reconsider. In it, they reiterated their arguments that the following types of incidents were not relevant: (1) incidents occurring after the plaintiff's injury, (2) incidents involving employees as opposed to customers, and (3) incidents involving overstock or any type of falling object other than a display item. They argued that providing the requested information without a protective order could be prejudicial to them because providing the plaintiff with contact information for every person involved in a falling-merchandise incident at a Toys "R" Us store "could result in plaintiff's counsel *** contacting these individuals." They argued that "[t]his could potentially undermine settlement negotiations" in any pending litigation by customers or workers' compensation claims by employees.

In support of their supplemental brief, the defendants provided the affidavit of Karen McCann, a manager in Toys "R" Us's risk management department. In her affidavit, McCann made essentially the same speculative allegation about the possibility of the plaintiff's counsel contacting other litigants. She stated simply that providing the requested information "presents a serious risk that the people involved in those incidents will be contacted by Ms. Willeford's counsel, or any other third party with whom Ms. Willeford and her counsel choose to share the list." In addition, McCann described the system of "cause codes" used to classify incidents of falling merchandise. Cause code 21 is the cause code for falling display items, while cause codes 22 and 23 cover falling overstock items, and cause code 26 is the code for falling merchandise that is neither a display item nor an overstock item. Each cause code is subdivided based on what caused the merchandise to fall (for example, whether it was knocked from the shelf by an employee or by a customer or because it was stacked improperly to begin with).

On March 29, 2006, the court entered an order limiting the scope of its May 27, 2005,

7

discovery order to cause code 21 incidents and other incidents involving falling display items. On May 5, the defendants filed a motion for a clarification of the court's March 29 order because that order did not address the court's rulings on the defendants' request for a protective order. We note that on May 3, the court did enter an order granting a protective order on workers' compensation claims. On July 19, 2006, the court entered a more formal protective order. That order provided that any information relating to workers' compensation claims that the defendants disclosed pursuant to discovery orders was to be confidential information and could not be disclosed to anyone who was not a party or attorney of record in this case. On the same day, the original trial judge recused himself from presiding over future proceedings in the case. The case was subsequently reassigned.

On November 2, 2006, the plaintiff filed a motion to strike pleadings and for other sanctions. She alleged that the defendants still had not complied with the court's discovery orders, even as modified by the March 29, 2006, order. On December 29, 2006, the defendants filed a response to the plaintiff's motion for sanctions, in which they requested that the court enter a "friendly contempt order" that would allow them to appeal the court's discovery rulings immediately.

The court heard arguments in the matter on January 18, 2007. The defendants repeated their objection to being required to produce, without a protective order, information regarding falling-merchandise incidents that occurred subsequent to the plaintiff's incident. The court specifically asked the parties to address whether Rule 201 requires a party seeking a protective order to demonstrate "good cause." The court determined that it would apply the good-cause standard to each document produced to determine whether the defendants had good cause for seeking a protective order on each. The court stated that it was not inclined to grant either the defendants' request for a friendly contempt order or the plaintiff's motion to strike the defendants' pleadings but that it would not make a decision without seeing the

8

relevant database records.

The court held another hearing on February 13, 2007, to consider the records. By this point, the parties had resolved their discovery disputes on everything except the database information involving incidents that occurred after the plaintiff's accident. Early in the hearing, the judge excused the plaintiff's counsel from the courtroom, ostensibly to consider the nature of each of the challenged records and documents to determine whether it was sensitive enough to merit protection. However, very little of the discussion centered on the nature of the information contained in the database. Rather, defense counsel was able to revisit unopposed their arguments concerning the plaintiff's attorneys' alleged motives in seeking the material and the standard to be applied in determining whether a protective order is warranted.

First, counsel for the defendants admitted, "We don't dispute that we need to show in some fashion that there is a reason for protection here, whether that's labeled as good cause or it's part of an as[-]justice[-]requires element[,] but we think we more than meet that." He went on to argue that the database records–with the names and contact information for people involved in falling-merchandise incidents after 2001–"is a blueprint for somebody to go out and make phone calls and start recruiting people as plaintiffs." The defendants' attorneys twice admitted that the plaintiff's attorneys' stated reason for requesting this information was to determine whether there was a pattern. Both times, however, they contended–without providing any basis–that what the plaintiff really wanted was to find potential class members or strengthen her position in settlement negotiations.

The court stated that, even accepting their assessment of the plaintiff's real motivation, the information in the database was not the type of information that ordinarily merited protection. The court explained as follows:

> "[N]ormally when a corporation comes before a court and they say they

9

have–there's a proprietary interest and it's not [just] that [they] don't want [the other party] to know about all the other times, let's say, a Crown Victoria caught fire when it was rear-ended or something fell from a shelf and hit somebody[,] *** which is different than what you have here, isn't it? I mean, it's more than just causing economic harm. I mean, *** I think you're right why the plaintiffs [*sic*] probably want it. They probably want it so they can go out and contact people to see if they can drum up business and obviously that's something adverse to Toys 'R' Us to do [*sic*][,] but that's different [from cases where protective orders are generally used]."

After further discussion along the same lines, the court told the defendants' attorneys that it was going to enter a friendly contempt order. Then the plaintiff's attorneys were allowed to return to the courtroom, and the court announced that it had reached a decision and it was "going to do what's commonly referred to as a friendly contempt."

On March 12, 2007, the court entered an order finding that the challenged material was "not the kind deserving of protection against dissemination" and holding the defendants in contempt of court for violating previous discovery orders. The court imposed as a sanction an order for the defendants to pay $1,000 and all the plaintiff's reasonable attorney fees after February 13, 2007. The court denied the plaintiff's motion to strike the defendants' pleadings. The defendants filed the instant appeal on April 10, 2007.

The parties disagree on the standard of review to be applied on appeal. As the plaintiff correctly contends, trial courts enjoy a great deal of latitude in determining whether a protective order is necessary. *Skolnick v. Altheimer & Gray*, 191 Ill. 2d 214, 223, 730 N.E.2d 4, 12 (2000). Thus, on appeal, we ordinarily review rulings on protective orders for an abuse of discretion. *Skolnick*, 191 Ill. 2d at 224, 730 N.E.2d at 12. This case, however, turns, in part, on whether the court below applied the correct standard. That is an issue of law that we will decide *de novo*. *Milligan v. Gorman*, 348 Ill. App. 3d 411, 416, 810 N.E.2d

10

537, 541 (2004).

As previously noted, Rule 201(c) does not contain any language expressly requiring a showing of good cause before a protective order may be entered. By its terms, the rule provides that a court may enter a protective order, either at the request of any party or even on its own motion, "as justice requires." 210 Ill. 2d R. 201(c)(1). Trial courts have discretion to determine whether justice requires a protective order–and what the parameters of the order should be. *Skolnick*, 191 Ill. 2d at 224, 730 N.E.2d at 12. We emphasize that this gives trial courts broad discretion to determine that a protective order is *not* warranted just as it gives them broad discretion to determine that a protective order *is* warranted.

The rule itself does not define the as-justice-requires standard. The supreme court discussed this standard in *Statland v. Freeman*, 112 Ill. 2d 494, 493 N.E.2d 1075 (1986), and this court discussed it in *May Centers, Inc. v. S.G. Adams Printing & Stationery Co.*, 153 Ill. App. 3d 1018, 506 N.E.2d 691 (1987). Although the two cases use different language to describe the requirements of the rule, we do not find them to be inconsistent.

In *Statland*, the plaintiff was an attorney who sued eight of his former law partners for an accounting of their partnership's profits. *Statland*, 112 Ill. 2d at 496, 493 N.E.2d at 1076. The dispute involved partnership interests in a business partnership that was a client of the law firm. The firm had received partnership interests in the business partnership as compensation for legal services rendered. *Statland*, 112 Ill. 2d at 496, 493 N.E.2d at 1076. The records sought to be protected included financial records and records of the negotiations relating to the partnership interests and legal fees paid by the client. *Statland*, 112 Ill. 2d at 497, 493 N.E.2d at 1076. After discovery was completed–and the documents were provided–the plaintiff told his former partners that, if necessary, he would use the documents in an unrelated Internal Revenue Service investigation of the plaintiff. *Statland*, 112 Ill. 2d at 497, 493 N.E.2d at 1076. The defendants then filed a motion for a protective order,

11

arguing, among other things, that the parties had agreed that the information would not be used outside of the litigation. *Statland*, 112 Ill. 2d at 497, 493 N.E.2d at 1076-77. The court ultimately granted the motion. *Statland*, 112 Ill. 2d at 497, 493 N.E.2d at 1077.

On appeal, the plaintiff argued that the trial court abused its discretion by entering the protective order because, under Rule 201, "the defendants were required to allege any facts showing that the entering of a protective order was necessary." *Statland*, 112 Ill. 2d at 499, 493 N.E.2d at 1077. In rejecting this argument, the court explained as follows:

> "Rule 201(c)(1) does not set out any *specific* requirements for protective orders. There is only the broad standard 'as justice requires.' The committee comments to Rule 201 note that subparagraph (c)(1) provides for 'broad discretion to make protective orders.' *Here, the trial court was informed of the nature of the discovered material*[] *and that the plaintiff intended to use it in another proceeding.* On this record it cannot be said that the order was improperly entered ***." (Emphases added.) *Statland*, 112 Ill. 2d at 499, 493 N.E.2d at 1077-78.

We emphasize that the lack of *specific* requirements for protective orders does not mean that a party seeking a protective order is entitled to a protective order without demonstrating in some fashion that one is warranted. The defendants in this case effectively conceded as much during the hearing from which the plaintiff's attorneys were excluded. The defendants in *Statland*, unlike the defendants here, sought to protect financial records and records of business negotiations. These types of documents have been recognized as being inherently sensitive. See *May Centers, Inc.*, 153 Ill. App. 3d at 1022, 506 N.E.2d at 694-95 (citing *Richards v. Superior Court*, 86 Cal. App. 3d 265, 150 Cal. Rptr. 77 (1978)). The plaintiff in *Statland*, unlike the plaintiff here, expressly announced his intent to use these inherently sensitive materials in an unrelated proceeding. The plaintiff contended that something more was required, and it is that argument that the *Statland* court rejected. We

12

do not read *Statland* to hold that a trial court *must* enter a protective order anytime a litigant alleges that the material it provides, regardless of the nature of that material, could potentially be used by another party in another suit.

In *May Centers, Inc.*, this court used somewhat more narrow language in describing the requirements of Rule 201. That case involved a dispute over an allocable share lease for store space in a shopping mall. *May Centers, Inc.*, 153 Ill. App. 3d at 1018-19, 506 N.E.2d at 692. The plaintiff landlord was ordered to produce the allocable share leases with all of its tenants in the Alton Square Mall, subject to a protective order keeping the leases confidential. *May Centers, Inc.*, 153 Ill. App. 3d at 1019-20, 506 N.E.2d at 693. The defendant tenant moved to vacate the protective order, arguing that the defendant needed to be able to discuss the leases with nonparties in order to investigate the possibility of a class action and to look for evidence that could be used for impeachment purposes. *May Centers, Inc.*, 153 Ill. App. 3d at 1020, 506 N.E.2d at 693. In ruling on this motion, the trial court noted that the plaintiff had not explained the nature of an allocable share lease and that the only evidence of prejudice that might flow from the disclosure of the leases was conclusory. *May Centers, Inc.*, 153 Ill. App. 3d at 1020, 506 N.E.2d at 693.

On appeal, this court reversed. We first explained that courts recognize that financial data, such as that contained in the allocable share leases, is inherently sensitive. *May Centers, Inc.*, 153 Ill. App. 3d at 1022, 506 N.E.2d at 694-95. We then discussed the irrefuted testimony of the plaintiff's chairman. He testified that allocable share lease agreements were, as a matter of business practice, kept confidential in order to protect the interests of developers and commercial landlords. The reason for this was to prevent a tenant negotiating a new or renewed lease from using its knowledge of the terms of one of the landlord's other allocable share leases in order to extract more favorable terms. *May Centers, Inc.*, 153 Ill. App. 3d at 1020, 506 N.E.2d at 693. We found that this type of business injury,

13

which was likely to flow from the free dissemination of the inherently sensitive information, was "not a necessary or even a desirable price for plaintiff to have to pay to vindicate its alleged rights." *May Centers, Inc.*, 153 Ill. App. 3d at 1022, 506 N.E.2d at 695. This was particularly so when the defendant's ability to find either impeaching evidence or potential class members by discussing the information with nonparties was speculative. *May Centers, Inc.*, 153 Ill. App. 3d at 1023, 506 N.E.2d at 695. We thus concluded that the plaintiff had shown "good reason for the protective orders" it sought, while the defendant had not shown good reason to vacate the orders. *May Centers, Inc.*, 153 Ill. App. 3d at 1023, 506 N.E.2d at 695.

Ironically, the defendants contend that the circumstances of this case are analogous to those present in *May Centers, Inc.*, while they also contend that the trial court erred by relying on our statement in the *May Centers, Inc.* opinion that, "by its own terms, Rule 201(c) requires the party seeking a protective order to show *good cause*." (Emphasis added.) *May Centers, Inc.*, 153 Ill. App. 3d at 1022, 506 N.E.2d at 694. We address each argument in turn.

We do not find the circumstances present in the instant case to be analogous to the circumstances of *May Centers, Inc.* There, as in *Statland*, the material to be protected included inherently sensitive financial documents, the type of discovery material that is often subject to a protective order. See *May Centers, Inc.*, 153 Ill. App. 3d at 1022, 506 N.E.2d at 694-95. This case, by contrast, involves records of accidents similar to the plaintiff's. *May Centers, Inc.* involved potential harm to the *business interests* of the plaintiff, completely separate and distinct from the litigation. Here, by contrast, the only potential harm the defendants have pointed to is the possibility that the plaintiff could put together a class action or undermine its bargaining position *in litigation*.

Further, contrary to the defendants' characterization, we did not hold that the *May*

14

*Centers, Inc.* defendant's stated intent to discuss the leases with nonparties in the hope of finding impeachment evidence and/or putting together a possible class was inherently improper or abusive. Rather, we found that, on the record before us in that case, the defendant's ability to realize that goal if allowed to discuss the information with nonparties was speculative. In this case, the plaintiff's stated purpose in seeking the names and contact information for people involved in similar incidents was to determine whether a pattern existed–and we note that this was the plaintiff's stated purpose no matter how many times the defendants' attorneys argued that her attorneys really had the ulterior motive of looking for other clients. While it is not certain that the plaintiff will find evidence of a pattern by contacting these people, the discovery request is reasonably calculated to lead to that evidence. We thus find this case distinguishable from both *Statland* and *May Centers, Inc.*

As previously noted, the "good cause" language at the heart of the parties' dispute over the correct standard to be applied in ruling on a motion for a protective order comes from this court's *May Centers, Inc.* decision. The opinion, read as a whole, stands for no more than the proposition that a protective order should be entered if a litigant demonstrates there is a good reason to conclude that justice requires it. Nevertheless, to the extent that the language "good cause" implies a more onerous burden on a party seeking the protective order than the as-justice-requires standard expressly stated in the rule, we now clarify that was not our intent. In other words, as used in *May Centers, Inc.*, the good-cause requirement means only that a party seeking a protective order needs to show some valid reason for the order.

We are not persuaded, however, by the defendants' argument that the court applied the wrong standard in refusing to enter a broader protective order. Although the court used the language "good cause," it is clear from the court's discussions at the closed session with the defendants' attorneys that the court focused its analysis on the nature of the database records and whether they were the type of material that should be the subject of a protective order.

15

The court correctly concluded that they were not. In other words, the court found that the defendants did not show that justice required the entry of a protective order. It was not simply a matter of applying a more rigorous standard than required; they did not demonstrate the need for a protective order at all. We therefore decline to direct the court to enter a broader protective order.

We next consider the defendants' argument that the contempt order should be vacated because it was a "friendly contempt" order, entered to allow the defendants to challenge the discovery rulings with an immediate appeal. We reject this argument. First, the written order does not state that it is a "friendly contempt" order. The trial judge announced from the bench that he was "*going to* do what's commonly referred to as a friendly contempt" (emphasis added). Second, even assuming this statement amounts to a ruling, we find that a friendly contempt order would have been in error. The defendants did not file a motion for a protective order until a year after the relevant discovery responses were due. Even then they did not seek immediate review through friendly contempt. Rather, they filed a motion to reconsider–which attacked the validity of the underlying discovery order yet again–and then waited eight more months for the plaintiff to file a motion for sanctions. It was not until they responded to the plaintiff's motion that they sought a friendly contempt order. In total, the defendants' tactics led to five years of litigation over whether they were required to provide the names and contact information of people who might have information relevant to the plaintiff's case. This simply does not warrant a finding that they acted in good faith to challenge a discovery ruling. Thus, we decline to vacate the contempt order.

For the foregoing reasons, we affirm the rulings of the trial court.


Affirmed.

16

STEWART, P.J., and WEXSTTEN, J., concur.

NO. 5-07-0201

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| LELA WILLEFORD, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 03-L-134 |
| | ) | |
| TOYS "R" US-DELAWARE, INC., TOYS "R" US, | ) | |
| INC., JANET STUBBLEFIELD, and CAROL | ) | |
| POST MEYERS, | ) | Honorable |
| | ) | Lloyd A. Cueto, |
| Defendants-Appellants. | ) | Judge, presiding. |

---

**Opinion Filed**: September 16, 2008

---

| | |
|---|---|
| **Justices**: | Honorable Melissa A. Chapman, J. |
| | |
| | Honorable Bruce D. Stewart, P.J., and |
| | Honorable James M. Wexstten, J., |
| | Concur |

---

| | |
|---|---|
| **Attorneys for Appellants** | Richard M. Hoffman, David M. Oppenheim, Wildman, Harrold, Allen & Dixon, LLP, 225 West Wacker Drive, Chicago, IL 60606-1229; Robert J. Bassett, Donovan, Rose, Nester & Joley, P.C., 8 East Washington Street, Belleville, IL 62220 |

---

| | |
|---|---|
| **Attorneys for Appellee** | Daniel J. Cohen, Charles W. Armbruster, The Lakin Law Firm, P.C., 300 Evans Avenue, P.O. Box 229, Wood River, IL 62095 |