# Illinois Official Reports

## Appellate Court

*In re Daveisha C.*, 2014 IL App (1st) 133870

| | |
|---|---|
| Appellate Court Caption | *In re* DAVEISHA C., a Minor, Respondent-Appellant (The People of the State of Illinois, Petitioner-Appellee, v. Latoya C., Mother-Respondent). |
| District & No. | First District, Third Division<br>Docket No. 1-13-3870 |
| Filed | August 27, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In proceedings on a petition seeking an adjudication of wardship based on allegations that respondent minor was neglected and sexually abused, the trial court's protective order related to the recording of respondent's victim sensitive interview barring, without leave of court, the public guardian from copying his copy of the interview and requiring that all copies of the interview be turned over to the State's Attorney's office after completion of any appeals was affirmed, notwithstanding the public guardian's contentions that the order was an unreasonable and improper restraint on discovery that denied the public guardian full access to his client's interview, since the trial court did not abuse its discretion in recognizing the sensitive nature of the interview and the need for strict protective measures, and the prohibition against further copying and the requirement that all copies be returned after the appeals were decided were reasonable, especially in view of the trial court's broad discretion under Supreme Court Rule 201 to "make a protective order as justice requires." |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-JA-500; the Hon. Bernard J. Sarley, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Robert F. Harris, Public Guardian, of Chicago (Kass A. Plain and Janet L. Barnes, of counsel), for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg and Nancy Kisicki, Assistant State's Attorneys, of counsel), for the People.

Panel

PRESIDING JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justices Neville and Mason concurred in the judgment and opinion.

**OPINION**

¶ 1     This interlocutory appeal contests, as an unreasonable and improper restraint on discovery, a protective order involving copies of the recording of a victim sensitive interview (VSI) of the public guardian's client, a minor and victim of sexual abuse. The juvenile court entered the protective order barring, without leave of court, the public guardian from copying his copy of the VSI and requiring all copies turned over to the State's Attorney's office after completion of any appeals.

¶ 2     The public guardian argues the protective order wrongly prohibits it from full access to its client's interview. Alternatively, the public guardian contends that even if properly entered, the protective order should have allowed the public guardian, as the minor's attorney and guardian *ad litem*, to retain a copy of the VSI for its files at the conclusion of the case.

¶ 3     We hold the trial court did not abuse its discretion in granting the protective order, which allowed all parties' counsel to receive a copy of the minor's VSI on signing an acknowledgment of the protective order. The trial court properly recognized the sensitive nature of the minor's recorded interview and the need for strict protective measures. We do not find the protective order unreasonable under the facts nor do we find unreasonable either (i) the prohibition barring further copying without leave of court or (ii) the requirement that the public guardian return his copy (or, potentially, copies) after all appeals had been decided.

¶ 4                                    BACKGROUND

¶ 5     Minor Daveisha C., born on April 30, 2008, came to the attention of the Department of Children and Family Services (DCFS) through a hotline call reporting allegations that her stepfather used inappropriate corporal punishment and subjected her to cruelty, and that her mother, Latoya C., failed to protect her. The State filed a petition for adjudication of wardship, naming Daveisha's mother and stepfather, David F. The State's petition alleged Daveisha was neglected and abused. A motion for temporary custody accompanied the petition.

¶ 6     The State alleged that the mother accumulated five indicated reports "for inadequate supervision, inadequate shelter, environmental neglect, inadequate food and substantial risk of

physical injury/environment injurious to health/welfare by neglect/abuse." In addition, she refused to attend domestic violence classes, complete a mental health assessment, and undergo anger management counseling. As for the stepfather, who was in need of substance abuse counseling, he had one indicated report for substantial risk of physical injury/environment injurious to health/welfare by neglect involving Daveisha and two sisters and three brothers. Daveisha and her siblings told authorities their stepfather often would hold them upside down and whip them, something their mother refused to believe. The stepfather scared the siblings, and one of them reported a swollen eye after a whipping. Paternity remained an issue and the whereabouts of the putative father were not known.

¶ 7    On May 23, 2013, DCFS took temporary protective custody of the children.

¶ 8    A week later, the juvenile court held a temporary custody hearing concerning Daveisha. The court appointed Cook County Public Guardian Robert F. Harris (hereinafter, Public Guardian) as Daveisha's attorney and guardian *ad litem*. In doing so, the court marked a box on the appointment form order stating that the attorney and guardian *ad litem* "shall have access to all relevant documents." The court appointed the public defender of Cook County to represent Daveisha's mother, Latoya. The court found probable cause existed to believe Daveisha was abused and neglected or both, and that an immediate and urgent necessity existed to remove her from the home. The court appointed the DCFS guardianship administrator as Daveisha's temporary custodian.

¶ 9    In June, DCFS clinicians completed an integrated assessment concerning Daveisha, her siblings, mother, and stepfather. Daveisha's foster mother reported that Daveisha frequently became upset and cried during the day without a trigger.

¶ 10   Daveisha participated in a victim sensitive interview at the Chicago Children's Advocacy Center (CCAC). The CCAC is a child-focused program composed of a multidisciplinary team of members of the special investigations unit of the youth investigations division of the Chicago police department, the Cook County State's Attorney's office, DCFS, and Cook County Hospital. During the VSI, Daveisha stated she was sexually abused. Daveisha's VSI was electronically recorded.

¶ 11   Daveisha's case was continued while paternity was addressed and the parties participated in mediation. As the case moved toward adjudication, the State and the Public Guardian subpoenaed records, including those from the CCAC.

¶ 12   On October 30, 2013, the State informed the juvenile court that Daveisha had participated in a VSI at the CCAC in July. The State said that before tendering a copy of the recorded interview to the parties, it sought entry of a proposed protective order similar to protective orders entered by the court in other cases. (Related appeals from protective orders entered by the same juvenile court judge are pending before this court. See *In re Candise W.*, Nos. 13-3279, 13-3335 (cons.).) The Public Guardian requested a written motion; the State agreed to file one.

¶ 13   The State's motion to enter the protective order relied on Illinois Supreme Court Rule 201(c), under which a court may enter a protective order "as justice requires." Ill. S. Ct. R. 201(c) (eff. Jan. 1, 2013). The State noted that Daveisha's interview included statements by her that she had been sexually abused and details about what had happened. The State maintained that it was not seeking to deny the parties the opportunity to inspect or view the VSI. Rather, the State wanted to tender the discovery only under an order that would protect the interview's sensitive nature. Specifically, the State maintained that the interview was as

sensitive as pornography because Daveisha discussed the specifics of the sexual abuse and, therefore, the interview should be maintained and preserved with the same strict measures. The State cited section 1-2 of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/1-2 (West 2012)) and stated that it was seeking the protective order "in the spirit of humane concern for this minor and as a measure to protect this minor's best interests to ensure that this sensitive information is secured." The motion detailed the strict procedures the State's Attorney's office followed once the VSI was received from the CCAC and alleged that neither the guardian *ad litem* nor Daveisha's mother could offer the same safeguards. The State noted that without a protective order, nothing would prevent the parties from making additional copies of the VSI or from saving portions of it to a computer, increasing the chance that unauthorized individuals could access it.

¶ 14    The State further assured that the proposed protective order allowed the parties full access to the VSI on agreeing to the acknowledgement. As to all copies of the VSI being returned at the end of the case, the State submitted that the VSI should be limited to the pending juvenile proceeding. Attached to its motion were a proposed protective order and a proposed acknowledgement of the protective order.

¶ 15    Thereafter, the Public Guardian filed a motion seeking leave to file a supplemental petition for adjudication of wardship alleging that Daveisha was sexually abused.

¶ 16    On December 6, 2013, the juvenile court heard both the State's motion for a protective order and the Public Guardian's motion for leave to file a supplemental petition. The court granted the Public Guardian's motion to file a supplemental petition without objection. The protective order, however, was entered over the Public Guardian's objections.

¶ 17    The Public Guardian contended that the VSI contained evidence directly related to the supplemental petition and, as such, he had a right to have a copy of it for trial. Moreover, the protective order placed an unreasonable restraint on his access to discovery concerning his client, improperly enjoined him from copying the DVD for potential experts without court approval, and improperly required the copy's return after final disposition of any appeals.

¶ 18    Responding to the court's inquiry about how the DVD was made, the State explained that the CCAC had the original DVD, which the State subpoenaed, and after receiving it, kept the DVD in a locked safe box in the State's Attorney's office. In response to another inquiry from the court, the State indicated that the procedures in this case were consistent with the procedures used in other cases where DVDs were made and motions for protective orders were filed.

¶ 19    Then, the court asked the Public Guardian whether its motion for a supplemental petition for adjudication of wardship made this case different. The Public Guardian insisted he "should have unlimited access to all of the evidence that would support [his] motion," and that without unlimited access, preparation of the case would be unduly burdened. The court responded, "Of course, if you sign the order, you would have access to the DVD prior to trial." To this, the Public Guardian replied:

> "Right. Our office's position is that we will not sign the acknowledgment. Prior to trial, I understand that. But I also believe that this could be relevant to anything posttrial. It could be relevant to my client's treatment. As you're well aware in cases, different service providers are in and out of our client's cases. So different service providers might want access to that DVD. I think it's only prudent for the attorney for the child in question to have a copy of the DVD."

¶ 20    On behalf of Daveisha's mother, the assistant public defender told the court he did not have a position, but was prepared to sign a receipt for the DVD.

¶ 21    In granting the protective order, the juvenile court noted that its decision followed rulings in previous cases, and commented:

> "I feel that it is in the best interest of the minor to enter the protective order for the protection of the minor and to guard against the DVD getting into the wrong hands. I don't believe that any of the parties' rights to prepare for trial or ability to prepare for trial are hampered by the entering of the protective order. The GAL, if they wish, could sign the acknowledgement and have access to the DVD to prepare for trial. The issues that have been stated as to future use of the DVD after trial, either by therapists or later on if the minor for some reason wanted to have access to the DVD, could be addressed, in that, in those situations the GAL or the minor could seek leave of Court to get access to the DVD. Additionally, in this situation, even if the GAL chose not to have–to sign the acknowledgement and get a copy of the DVD, they could even, prior to trial, go to the State's Attorney's Office and view the DVD as a less favored alternative."

¶ 22    The assistant public defender signed the acknowledgement of receipt of the protective order; the Public Guardian refused. (The protective order is appended to the end of this opinion.)

¶ 23    The Public Guardian seeks to vacate the protective order or, alternatively, remand the case to the juvenile court with instructions to modify the order to allow full access for party agents and for the Public Guardian to retain a copy of Daveisha's VSI.

¶ 24                                    ANALYSIS

¶ 25    Supreme Court Rule 307(a)(1) allows review of an order granting or denying injunctive relief; in this case, a protective order entered during the discovery phase of the proceedings. Ill. S. Ct. R. 307(a)(1) (eff. Feb. 26, 2010).

¶ 26    The Public Guardian argues that the acknowledgment is not in Daveisha's present or future best interest because (i) the supplemental petition's claims of sexual abuse gives him the right to receive a copy of Daveisha's recorded VSI without strings attached; and (ii) review of the recorded VSI at the State's Attorney's office with Daveisha and professional staff of his office would undermine confidentiality by infringing on his ethical duties to Daveisha and improperly disclosing attorney work product.

¶ 27    Trial courts have wide discretion in matters of discovery, including the entry of protective orders. *Payne v. Hall*, 2013 IL App (1st) 113519, ¶ 11. As the gatekeeper of discovery, the trial court must fairly weigh the competing needs and interests of the parties affected by the discovery. *Avery v. Sabbia*, 301 Ill. App. 3d 839, 845 (1998) (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)). To accomplish the purpose of discovery, the rules should be applied with flexibility. *Avery*, 301 Ill. App. 3d at 845 (citing *May Centers, Inc. v. S.G. Adams Printing & Stationery Co.*, 153 Ill. App. 3d 1018, 1021 (1987), citing *Sarver v. Barrett Ace Hardware, Inc.*, 63 Ill. 2d 454, 461-62 (1976)).

¶ 28    Under Illinois Supreme Court Rule 201(c), a court may enter a protective order, either at the request of a party or on its own motion, "as justice requires." Ill. S. Ct. R. 201(c) (eff. Jan. 1, 2013). Whether justice requires a protective order, and the parameters of that order, falls within the discretion of the trial court. *Payne*, 2013 IL App (1st) 113519, ¶ 12 (citing *Willeford v. Toys "R" Us-Delaware, Inc.*, 385 Ill. App. 3d 265, 273 (2008)). We review the

- 5 -

entry of the protective order under an abuse of discretion standard, and unless convinced that the judge's entry of this order amounted to an abuse of discretion, we are without authority to reverse. *Avery*, 301 Ill. App. 3d at 844.

¶ 29 The Public Guardian, relying on *Skolnick v. Altheimer & Gray*, 191 Ill. 2d 214, 226 (2000), argues that the juvenile court's refusal to modify the protective order constitutes an abuse of discretion because the court's requirement that he sign an acknowledgement with which he does not agree prevents him from fulfilling his ethical duties to his client. Further, as worded, unless he signs the acknowledgement, the protective order intrudes on his confidential review of the VSI with Daveisha or a "necessary professional, in preparation for trial and possible testimony, or for any other legitimate purpose."

¶ 30 In *Skolnick*, a protective order covering information received during discovery prevented an attorney from fulfilling her duty to report attorney misconduct. The circuit court denied the attorney's request to modify the protective order so she could disclose the misconduct to the Attorney Registration and Disciplinary Commission (ARDC). *Skolnick*, 191 Ill. 2d at 218-19, 224. The Illinois Supreme Court held the trial court abused its discretion, noting that "[i]n the absence of any stated justification for refusing to modify the protective order, the interests of justice weigh decidedly in favor of allowing [the attorney] to fulfill her ethical duty to disclose the alleged attorney misconduct." *Skolnick*, 191 Ill. 2d at 226.

¶ 31 *Skolnick* is readily distinguishable. In *Skolnick*, the attorney could only fulfill her duty in one way–by reporting the misconduct to the ARDC. In contrast, under the protective order, the Public Guardian had several options that would allow him to fulfill his ethical obligations to Daveisha. As the juvenile court noted, even if the Public Guardian chose not to sign the acknowledgment and get his own copy of the recorded VSI, "they could even, prior to trial, go to the State's Attorney's Office and view the DVD as a less favored alternative." We agree.

¶ 32 Further, the Public Guardian contends his status as the petitioner grants him the right to receive a copy of Daveisha's recorded VSI, which is undermined by the protective order's acknowledgement requirement and contrary to the discovery rules, relying on Illinois Supreme Court Rule 201(b)(1) (eff. Jan. 1, 2013) (provides for full disclosure of any relevant matter) together with Illinois Supreme Court Rule 907(b) (eff. July 1, 2006) (provides a child's attorney and guardian *ad litem* shall have access to all relevant documents).

¶ 33 The State responds that choosing not to sign the acknowledgement is not the same as being denied full access to Daveisha's VSI–the acknowledgement provides full access by giving the Public Guardian an actual copy of the VSI.

¶ 34 The trial court held the Public Guardian's status as a petitioner granted no additional rights or responsibilities and is irrelevant to his having a physical copy of the VSI. We agree. Nothing in the protective order prevents the Public Guardian from being afforded discovery consistent with the supreme court rules. By its nature, a protective order regarding discovery will in some way limit or restrict use. The Public Guardian can have full access to the VSI, just not full control. The question of control is squarely an issue for the court to decide whenever a party presents it with a motion for a protective order.

¶ 35 Good Cause Underlying Protective Order

¶ 36 Next, the Public Guardian contends there was no good cause or valid reason for the protective order. The Public Guardian agrees that Daveisha's recorded VSI contains sensitive material in that she discusses the specifics of the sexual abuse. Yet, the Public Guardian

maintains that because a purpose of a protective order is to prevent abuse during discovery (*Payne*, 2013 IL App (1st) 113519, ¶ 15), and the State never made an offer of proof about what specific abuses it sought to protect, the Act and the Illinois Rules of Professional Conduct of 2010 provide sufficient protection for the recorded VSI. There was no suggestion that any party intended to abuse the discovery process here. Accordingly, this argument provides no basis for reversal.

¶ 37                     Juvenile Court Act as Sufficient Protection

¶ 38      The Public Guardian maintains that the Juvenile Court Act carries sufficient protections for the VSI and, therefore, the protective order was unnecessary and unduly burdensome. The Public Guardian directs our attention to three sections of the Act, sections 1-5(6), 1-7 and 1-8. 705 ILCS 405/1-5(6), 1-7, 1-8 (West 2012).

¶ 39      Section 1-5(6) directs that juvenile court proceedings are "closed to the general public." 705 ILCS 405/1-5(6) (West 2012). This section, however, does not offer protection for Daveisha's VSI outside the context of the juvenile court hearing.

¶ 40      The Public Guardian also cites section 1-7 of the Act, which provides for the confidentiality of law enforcement records, those maintained by "law enforcement agencies" that relate to a minor who has been arrested or taken into custody. 705 ILCS 405/1-7 (West 2012). As the State points out, only "law enforcement records" are protected under section 1-7 and, therefore, because the VSI is not a law enforcement record, the section does not apply.

¶ 41      Section 1-8 addresses the inspection and copying of "juvenile court records." 705 ILCS 405/1-8 (West 2012). The Public Guardian contends that because the inspection and copying of the records is narrowly restricted and not available to the general public, the VSI is sufficiently protected. The State points out, however, that "juvenile court records" include only what has actually been entered into the court record, not discovery documents, and, therefore, the VSI would not be protected under section 1-8. See *Skolnick*, 191 Ill. 2d at 236 ("discovery is distinct from documents that are filed with the court").

¶ 42      As the State argued in its motion for the protective order, "the [Act] does not provide protection or govern the confidentiality of what is contained in an attorney's personal file." Moreover, "the Act fails to prescribe a sanction for a violation of its confidentiality provisions." *Camco, Inc. v. Lowery*, 362 Ill. App. 3d 421, 431 (2005). The protective order provides that any violation "may result in sanctions by [the juvenile court], including contempt, and may be punishable by state or federal law," a safeguard lacking in the Act.

¶ 43      We are unpersuaded the trial court abused its discretion by finding the provisions of the Act insufficient and that a protective order was necessary to protect Daveisha's best interests.

¶ 44           Illinois Rules of Professional Conduct of 2010 as Sufficient Protection

¶ 45      The Public Guardian also argues the Illinois Rules of Professional Conduct provide sufficient protection for the VSI. He cites Rule 1.6(a), which directs that a lawyer shall not reveal information relating to the representation of a client, and paragraph 16 in the comments, which provides that a lawyer "must act competently to safeguard information relating to the representation of a client against inadvertent or unauthorized disclosure by the lawyer or other person who are participating in the representation of the client or who are subject to the lawyer's supervision." Ill. R. Prof. Conduct (2010) R. 1.6(a), Committee Comments, ¶ 16 (eff. Jan. 1, 2010). The Public Guardian also cites Rule 1.9 and argues that even after juvenile

court proceedings close, the attorney must keep information relating to the representation confidential. Ill. R. Prof. Conduct (2010) R. 19 (eff. Jan. 1, 2010).

¶ 46     The State contends the Illinois Rules of Professional Conduct do not go far enough to restrict access to the VSI because only lawyers are bound by the rules. The State argues that because of the sensitive nature of the recorded VSI and the ease with which it can be copied and distributed, the juvenile court properly exercised its discretion to determine that the Rules of Professional Conduct provided inadequate protection.

¶ 47     The Public Guardian contends that there is no evidence in the record that the attorneys representing the parties cannot adequately protect the sensitive nature of the VSI. Yet, in response to the State's detailing of the strict procedures followed by the State's Attorney's office in securing the VSI from the CCAC before the juvenile court, the Public Guardian offered no information about any precautions its office would take to protect the VSI. Counsel for Daveisha's mother presented no argument and agreed to sign the acknowledgement to receive the VSI.

¶ 48     The State contends the protective order is consistent with the Act's directive that courts apply the Act "in a spirit of humane concern, not only for the rights of the parties, but also for the fears and the limits of understanding of all who appear before the court." 705 ILCS 405/1-2(2) (West 2012). The State maintains that by entering the protective order, the juvenile court used its discretion to act in Daveisha's best interest by protecting against invasion of her privacy and recognized the necessity for greater protection of the VSI.

¶ 49     Acknowledging there is no case law directly on point in Illinois, the State looks to other courts in which similar issues have been considered. The State cites *New Jersey v. Scoles*, 69 A.3d 559, 563-64 (N.J. 2013), in which the Supreme Court of New Jersey addressed how to balance the defense's need for meaningful access to the evidence in a child pornography prosecution, specifically, computer images of the alleged child pornography, against society's interest in protecting child pornography victims from the risk of unnecessary harm. The *Scoles* court made plain it was not questioning the professionalism of the criminal defense bar, but it needed to assess whether defense counsel had "the practical capacity to comply with technical restrictions that the court should impose to maintain the security of the copies of computer images provided to the defense team." *Scoles*, 69 A.3d at 572. In suggesting a framework for future courts in looking at this issue and crafting a protective order, the *Scoles* court held that defense counsel must show their willingness and ability to comply with the terms of a court-issued protective order designed to secure the computer images from intentional or unintentional distribution beyond those individuals authorized by the court to use the material. *Scoles*, 69 A.3d at 573.

¶ 50     The State maintains the juvenile court properly exercised its discretion by entering the protective order to ensure heightened protection for Daveisha's VSI, finding the protections afforded by the Act and the Illinois Rules of Professional Conduct were not enough. As *Scoles* suggests, the State urges us to hold that in a case where sensitive material is the subject of a discovery dispute, the court need not have evidence that an attorney intends to misuse the evidence in violation of ethical rules before it can properly enter a protective order.

¶ 51     We agree. In doing so, we recognize that *Scoles* is not binding and is factually distinguishable as a criminal case, which addresses concerns not relevant to juvenile court proceedings in Illinois. Nevertheless, we find instructive for our purposes the court's discussion about "the general right to discovery as it intersects with the flexibility afforded to the trial court, on a showing of good cause, to guard against unnecessary harm brought about

through a defendant's access to discovery." *Scoles*, 69 A.3d at 571. While stressing the importance of the exchange of pretrial discovery, the *Scoles* court cautioned that the revictimization of child victims is a real concern that must be prevented. *Scoles*, 69 A.3d at 572. The court emphasized careful consideration of defense counsel's ability to secure sensitive material from intentional or unintentional dissemination by unauthorized individuals. *Scoles*, 69 A.3d at 572. Although in a completely different context from criminal child pornography, we agree with the State that the juvenile court followed a similar approach to the *Scoles* court–by considering limited safeguards to preclude possible revictimization while still preserving counsel's right to discovery.

¶ 52　　Illinois Supreme Court Rule 201 (eff. Jan. 1, 2013) grants the trial court broad discretion to "make a protective order as justice requires." The protective order here directly relates to Rule 201's goal of "regulating discovery to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or oppression." Ill. S. Ct. R. 201(c)(1) (eff. Jan. 1, 2013). Additionally, the juvenile court may properly enter an order of protection necessary to protect the "health, safety and best interests of the minor" under section 2-25 of the Act. 705 ILCS 405/2-25 (West 2012).

¶ 53　　We find no abuse of discretion in the juvenile court's conclusion that a protective order was appropriate based on the facts. As the juvenile court stated, the protective order does not impermissibly impede the parties' ability to prepare for trial. The court properly found that "justice" required the entry of the protective order, despite the slight inconvenience to the parties, to protect Daveisha's best interest.

¶ 54　　　　　　　　　　　Modification of the Protective Order

¶ 55　　The Public Guardian argues the protective order lacks specificity and clarity. Pointing out that juvenile court proceedings are civil in nature (705 ILCS 405/2-18(1) (West 2012)), the Public Guardian directs our attention to the language in the order stating that the VSI may be used in "the defense" of this case. The Public Guardian argues the protective order as written is not tailored to a civil proceeding, but "appears to be based on a form used in a criminal proceeding."

¶ 56　　The Public Guardian also takes issue with the order not referring to the date of Daveisha's VSI and its failure to identify whether Daveisha's VSI was recorded on tape, disc, or DVD and whether the recording was audio or visual. The Public Guardian likens the protective order to a "blanket order" and argues that as such, it is inherently subject to challenge.

¶ 57　　We agree with the State that the alleged defects in the protective order are of no consequence and offer no reason to vacate, let alone modify, the protective order.

¶ 58　　The Public Guardian argues that even if the protective order was properly entered, it should be modified to allow "full access for party agents" and to allow the Public Guardian to retain copies of the VSI. The Public Guardian contends that as written, the protective order prohibits its employees, such as investigators, child interviewers, paralegals, social workers, psychologists, expert witnesses, consulting experts and other attorney/party agents from disclosing, displaying, copying or distributing the VSI. The Public Guardian argues that precluding attorney and party agents from having the same full right of access to the recorded VSI as the assigned attorney and guardian *ad litem* is "unreasonable, unnecessary, and contradicts the language of Rule 201(c)(1)."

¶ 59    As a reviewing court, we will alter the terms of a protective order only if no reasonable person could adopt the view taken by the circuit court. *Skolnick*, 191 Ill. 2d at 224 (citing *Cleveringa v. J.I. Case Co.*, 230 Ill. App. 3d 831, 848 (1992)).

¶ 60    The Public Guardian asks us to remand with instructions that the juvenile court modify the order to include language similar to that found in *Bush v. Catholic Diocese of Peoria*, 351 Ill. App. 588, 593 (2004). He suggests:

> "No person, other than an attorney or agents of an attorney representing a party to this proceeding, and the keeper of the record, shall review the digital audio and visual record of this forensic interview, or any portion thereof."

The Public Guardian asserts that by including language of this sort, the protective order would not be so overbroad and would allow the parties full pretrial investigation and discovery. The Public Guardian contends that without the proposed language, the protective order requires him to obtain prior court approval before accessing or disclosing the VSI to a consulting expert, which would apprise his opponent of the Public Guardian's trial strategy and encroach on attorney work product.

¶ 61    The State disagrees with the Public Guardian's assertion that party agents are denied full access to Daveisha's VSI under the protective order. The State points to the language of the protective order covering the ability of an assistant public guardian who receives a copy of the VSI to share it with other public guardian employees, as well as expert witnesses helping to prepare the case for trial:

> "The [recorded VSI] shall not be exhibited, shown, disclosed or displayed to any person or used in any fashion by any party to this action except in a judicial proceeding *or as may be directly necessary in the preparation of the defense of this action.*" (Emphasis added.)

The State maintains that leave of court is required only if the attorney seeks to make a new copy to give to the expert, but the attorney's copy may be shared with an expert without prior court permission. The State replies to the Public Guardian's argument that he would be tipping his hand if he requested an additional copy of the VSI for an expert, by suggesting the Public Guardian loan his copy to the expert or file his request for an additional copy under seal and seek an *ex parte* determination that such copying is allowed. We agree with the State's reading of the order.

¶ 62    The Public Guardian also argues the protective order should be modified to allow the Public Guardian to permanently retain a copy of Daveisha's VSI. As written, the protective order requires the Public Guardian to return the recorded VSI within 10 days of his withdrawal from the case and within 30 days from the completion of all appeals or within 30 days of the dispositional order if no appeal is filed.

¶ 63    The Public Guardian argues it has record retention policies and practices sufficient to protect the minors it serves. The Public Guardian contends that it should be allowed to maintain a copy of Daveisha's VSI in its files because the information could assist the Public Guardian in the future in advocating for services for Daveisha or other members of her family.

¶ 64    The Public Guardian expresses concern that because there is no provision in the protective order requiring the State to retain Daveisha's recorded VSI after the disposition hearing, there is no guarantee it will do so. Correctly, in granting the protection order, the juvenile court rejected this argument. The court ruled that the protective order was in the best interests of Daveisha and "the GAL or the minor could seek leave of Court to get access to the DVD" if the

need arose in the future. Moreover, any concern regarding permanent retention can be clarified by motion.

¶ 65    In sum, the trial court did not abuse its discretion by finding that the protective order's limits on copying and retention of the VSI were necessary to protect Daveisha's best interests. We find the limits reasonable.

¶ 66                                                    CONCLUSION

¶ 67    The Public Guardian has failed to demonstrate that an abuse of discretion occurred in granting the protective order. Under its terms, the protective order allows all parties' counsel to receive a copy of the minor's recorded interview, which includes statements of sexual abuse, but bars counsel from copying the recording without leave of court and requires the return of any copies, after adjudication, disposition, or any appeal. In entering the protective order, the trial court recognized that the sensitive nature of the minor's recorded interview required heightened safeguards while also providing all parties with full access to the VSI to prepare their case.

¶ 68    Affirmed.

¶ 69                                    Attachment: The Protective Order

"1. The [recorded VSI] shall not be exhibited, shown, disclosed, or displayed to any person or used in any fashion by any party except in a judicial proceeding or as may be directly necessary in the preparation of the defense of this action. Except that in the course of providing therapeutic services to the minor, the minor's therapist and DCFS Clinician shall be permitted to view DCFS legal attorney's copy of said [VSI], either alone or in the presence of the minor. When said [VSI] is being viewed for these purposes, it may be viewed outside the presence and without the direct supervision of the DCFS legal attorney, guardian *at litem*, and attorney for the minor. Attorney for DCFS shall instruct the minor's therapist and DCFS Clinician that no copies may be made and that the video is not to be shared with anyone outside of the therapeutic setting.

2. No copies of the [VSI] shall be made by counsel for any party except as may be directly necessary in the preparation of the defense of this case. Counsel for all parties shall obtain leave of court prior to making any copies of the [VSI]. At the conclusion of the case, counsel for all parties shall account for any copies.

3. The DVD copy or copies of the [VSI] shall be returned to the Cook County State's Attorney's Office within 10 days of any attorney's withdrawal from the case. All copies of said [VSI] shall be returned to the Cook County State's Attorney's Office within 30 days of the completion of all appeals or within 30 days of the dispositional hearing order if no appeal is filed.

4. The parties may personally review the discovered materials only in the direct presence and under the direct supervision of counsel.

5. Under no circumstances shall any party personally be given any of the materials or copies of the materials to retain in his or her possession including cases involving *pro se* litigants.

6. This protective order shall be applicable to any party, any attorney for any party, any translator for any party, any investigator, expert witness, agent or representative or any party.

7. A copy of this protective order shall accompany any copy made of the discovered materials and the recipient shall sign an acknowledgement that such person has read the order and agreess to be bound thereby. (See exhibit "A") This signed form shall be filed with the court by all counsel.

8. Any violation of this order may result in sanctions by this court, including contempt, and may be punishable by state or federal law."